## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Armando Duarte Islas, Jr.,

Petitioner,

v.

Charles L Ryan, et al.,

Respondents.

No. CV-17-00307-TUC-RCC (DTF)

**REPORT AND RECOMMENDATION**

Petitioner Armando Duarte Islas, Jr., ("Islas"), confined at the Arizona State Prison Complex, Cibola Unit, in San Luis, Arizona, filed a *pro se* Petition for Writ of Habeus Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). Pursuant to the Rules of Practice of the Court, this matter was referred to Magistrate Judge Ferraro for Report and Recommendation. The Magistrate Judge **recommends** the District Court, after its independent review of the record, **dismiss** the Petition.

## BACKGROUND

**Islas' Arrest**

In 2014, Islas improvidently sold heroin to the police. From his cellphone and while referring to himself by the name "Mando," Islas arranged with an informant to exchange an eight-ball of heroin for $140. The police and their informant arrived at the scene of the drug transaction at the prearranged time and watched as Islas and a companion arrived together. Islas' companion approached the informant and an undercover police officer and exchanged with the officer an eight-ball of heroin for $140

in 20-dollar denominations. Islas' companion then walked back over to Islas, where Islas was (unsuccessfully) attempting to stay out of sight behind a wall, and handed Islas the $140. The police immediately arrested Islas and his companion at the scene. The police searched Islas and found the $140 in 20-dollar denominations and no other cash. (Doc. 12 at pp. 4, 15-16, 28–32.)

**Islas' Conviction**

Islas and his companion were charged with one count of unlawful sale of a narcotic drug, a class-2 felony offense. Islas, a repetitive offender with two or more historical prior felony convictions, was subject to a sentencing range of 10.5 to 35 years' imprisonment. (Doc. 12 at p. 5; Doc. 13 at pp. 81, 92.) Islas' counsel secured on his behalf a favorable plea offer of 3 to 12.5 years for the class-2 felony offense. Islas rejected this plea offer. (Doc. 13 at p. 81-82.) Islas' counsel then secured an even more favorable plea offer of only 1 to 3.75 years for a class-4 felony drug offense. *Id*. at pp. 91-92. Islas also rejected this plea offer. The trial court held a *Donald* hearing at which the following colloquy between Islas and the trial court took place:

> THE COURT: Mr. Islas, we have talked to you once before.
> MR. ISLAS: Yes, sir.
> THE COURT: You had a plea then and you turned it down?
> MR. ISLAS: Yes, sir.
> THE COURT: At that time, I thought you knew what you were doing. I'm starting to wonder. Do you understand the range if you go to trial?
> . . . .
> MR. ISLAS: 10 and a half to 35.
> . . . .
> THE COURT: . . . . And under the [second] plea, the range is?
> [DEFENSE COUNSEL]: 1 to 3.75.
> MR. ISLAS: It looks tempting, doesn't it, Your Honor? But I'm declining, Your Honor.
> THE COURT: All right. You had plenty of time to talk to your lawyer about it and how the evidence is likely to go? I know you think you probably have a good defense in this case.
> MR. ISLAS: I still believe in the system. Innocent until proven guilty by all the rules of criminal procedure. I believe in the system.
> . . . .
> [DEFENSE COUNSEL]: Judge, for the record, I did advise him to take this plea.

> TRIAL COURT: Your lawyer has done a heck of a job getting this plea offer on the table. . . .
>
> . . . .
>
> MR. ISLAS: I understand I have good counsel.
>
> THE COURT: And you are going to go against his advice?
>
> MR. ISLAS: Well, I'm not going against his advice. We are standing together on this. He is my counsel.
>
> THE COURT: He stands ready, willing and able to go to trial and defend you to the fullest of his abilities.
>
> MR. ISLAS: I respect him for that.
>
> THE COURT: I respect him for it as well. But I suspect also that he strongly recommended that you take this plea. Don't tell me about it. But so when I go see a doctor and he tells me I need something, rarely do I say no, I don't. So you still want to turn it down?
>
> MR. ISLAS: Yes. I'm of sound mind.
>
> THE COURT: No problem at all, Mr. Islas. I am going to find that you have been fully advised and you knowingly, voluntarily and intelligently turned down the plea agreement. You are fully aware of the consequences. I don't want to hear you complain if things go south and I end up sentencing you to a lot of years.
>
> MR ISLAS: Okay. God bless you.

(Doc. 13 at pp. 90–94.) After a 2-day trial, the jury found Islas guilty on the charged class-2 felony drug offense. (Doc. 12 at p. 4; Doc. 13 at p. 63.) Islas was sentenced, as a repetitive offender, to a presumptive 15.75-year prison term.  (Doc. 12 at p. 5; Doc. 13 at pp. 6, 97-112.)

### Islas' Direct Appeal

Islas timely filed a direct appeal arguing that the admission at trial of statements made by the informant during recorded telephone calls and a statement made by his co-defendant during the recorded drug transaction violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. (Doc. 12 at p. 4.) In a memorandum decision the Arizona Court of Appeals found Islas' Confrontation Clause claim forfeited as to all but fundamental-and-prejudicial error for Islas' failure to raise it at trial. *Id.* at p. 5. The appeals court determined that no error, fundamental and prejudicial or otherwise, had occurred. *Id.* at pp. 6-8. Islas did not seek review of the court of appeals' decision in the Arizona

Supreme Court. (Doc. 14 at pp. 54-56.)

**Post-Conviction Relief Proceedings**

On July 28, 2015, Islas filed a timely notice of post-conviction relief ("PCR") in state court. (Doc. 14 at pp. 58-59.) The state court appointed Islas PCR counsel and, after a review of the record, PCR counsel filed a notice stating that he found no colorable claims for review. *Id.* at pp. 66-67. Islas subsequently filed a *pro se* PCR petition. (Doc. 15 at pp. 3-46.)

In his PCR petition, Islas argued that his trial counsel had been ineffective in his attempts to persuade Islas to accept the plea offer. Islas claimed that when he made the decision to reject the plea his trial counsel had not affirmatively disabused him of his apparent belief that the Confrontation Clause would require the trial court to preclude at trial the audiotaped telephone conversations between him and the informant. Islas also claimed that when he made the decision to reject the plea, his counsel had not yet reviewed certain evidence that the prosecution had not yet disclosed and counsel had not yet personally interviewed certain witnesses that Islas' codefendant's counsel had interviewed.

The trial court denied Islas' PCR petition determining that his trial counsel had not been ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). (Doc. 16 at pp. 3-5.) The trial court determined that Islas had failed to show deficient performance during the plea-negotiation process reasoning:

> It cannot be shown the counsel fell below an objectively reasonable standard because counsel did everything a reasonable attorney would do. It is apparent that Defendant's counsel worked hard to obtain two plea offers that were advantageous to the Defendant. . . . It is also apparent that counsel took the time to talk over the case and the evidence with Defendant. The record shows that Defendant had months between the first offered plea and his ultimate rejection of the second plea to talk with his lawyer about trial strategy and the evidence against him. . . .
>
> In [s]pite of the recommendation of counsel and the Court's obvious reluctance to accept the Defendant's rejection of the plea, Defendant intelligently, voluntarily, and knowingly decided to reject the second plea offer. Defense counsel does not have an obligation to review every

potential evidentiary issue, rather, counsel is obligated to address the concerns of the client and give an overall assessment of the case. This is particularly true here, where Defendant made assumptions based on his co-defendant's "advice" and where Defendant did not communicate his assumptions to his attorney. It is clear that counsel believed there was a chance that Defendant might lose at trial and that this chance was communicated to Defendant. . . . Taken together, it is the finding of this Court that counsel informed Defendant of the risks of going to trial, and his chances of success at trial.

…

While Defendant puts forth several examples of things his Counsel could have done differently or better, Defendant does not suggest how any of these things, if altered would have changed the outcome of his trial. Rather Defendant suggests that if his counsel had done things differently 'there would have been no trial.' Essentially, Defendant argues his counsel should have prepared better for trial and in so doing would have had more success convincing Defendant to take the plea. Defendant's second claim, in effect, does not address his [c]ounsel's trial performance at all.

(Doc. 16 at pp. 4-5.) The trial court denied Islas' PCR petition. *Id*. at p. 5.

**Motion for Reconsideration**

Islas moved for reconsideration of the trial court's denial of his PCR petition claiming that his trial counsel had been ineffective in advising him to reject the plea offer. Islas claimed that his trial counsel failed to mention the audiotaped phone conversations and he also represented that his decision to reject the second plea offer was in no way influenced by "his own assumptions or theories of the law." *Id*. at pp. 7-12. The trial court summarily denied Islas' motion for reconsideration. *Id*. at p. 14.

Islas sought review by the Arizona Court of Appeals re-urging his claim that trial counsel had ineffectively advised him to reject the second plea offer. *Id*. at p. 16. In his petition for review Islas claimed that he had not known about the existence of the audiotaped phone conversations when he rejected the second plea offer. *Id*. at pp. 20-21. In granting review but denying relief, the Arizona Court of Appeals determined that the trial court had not been obligated to address Islas' assertion that his trial counsel had advised him to reject the second plea offer because it was a claim that Islas raised for the

first time in his motion for reconsideration. (Doc. 16 at p. 32.) The appeals court determined that Islas' newly raised factual assertion was not supported by the record and agreed in all respects with the trial court's *Strickland* analysis. *Id*. at pp. 32-34. Islas did not seek review by the Arizona Supreme Court. *Id*. at pp. 35-36.

**The Instant Petition**

On July 5, 2017, Islas filed the instant Petition, raising three grounds for relief. In Ground I, he re-urges his Confrontation Clause claim that was asserted in his direct appeal. (Doc. 1 at p. 6.) In Ground II**,** Islas argues that his trial counsel was ineffective in failing to advise him of "the State's inability" to introduce evidence of the audiotaped phone conversations under "the 6th Amend[ment] Confrontation Clause" and that his trial counsel was ineffective in "never physically producing any plea agreement to Petitioner at any proceeding prior to trial." *Id.* at p. 7. In Ground III, Islas raises ineffective assistance of counsel (IAC) claims. *Id.* at p. 8.

## ANALYSIS

**Legal Principles**

The Petition is governed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. In order to seek federal habeas relief a state prisoner must allege that he is being held in violation of federal law. 28 U.S.C. § 2254(a). Before a state prisoner advances his claims in a federal habeas corpus petition, he must exhaust those claims in the state courts "by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). State exhaustion requires a prisoner to "'fairly present' his claims in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). For federal habeas exhaustion purposes, non-capital Arizona prisoners must present their federal claims to both the state trial court and state court of appeals. *Castillo v. McFadden*, 399 F.3d 993, 998 n.3 (9th Cir. 2005); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). Mere similarity between a claim raised in state court and a claim raised on federal habeas review is insufficient to preserve the federal

claim. *Duncan v. Henry*, 513 U.S. 364, 366 (1996); *Gray v. Netherland*, 518 U.S. 152, 162–65 (1996); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996).

**Procedural Status of Islas' Claims**

Ground I

As mentioned above, Islas' claim in Ground I of the Petition is that his right under the Confrontation Clause to the Sixth Amendment of the United States Constitution was violated by the trial court's admission of audio taped conversations between Islas and the police informant. As laid out above, Islas did not raise this claim in the trial court. Instead, Islas raised this claim for the first time in his direct appeal. As a result of Islas' failure to raise this claim in the trial court, the Arizona Court of Appeals determined that the claim was untimely and precluded as to all but fundamental-and-prejudicial error. The court of appeals determined that Islas failed to meet his burden of establishing that any such error was both prejudicial and fundamental.

The United States Court of Appeals for the Ninth Circuit has held that federal habeas review is foreclosed when the state court determines that a federal claim precluded because the petitioner failed to meet a state procedural requirement. *See Correll v. Stewart*, 137 F.3d 1404, 1417–18 (9th Cir. 1998). *See also, Stewart v. Smith*, 536 U.S. 856, 860 (2002) (state court determination that IAC claim was waived because habeas petitioner failed to raise it in prior state court PCR petitions was not a ruling on the merits and, thus, state court procedural default ruling was independent of federal law precluding federal habeas review). Here, the Arizona Court of Appeals determined that this claim was precluded on appeal as to all but fundamental error because Islas failed to raise his Confrontation Clause claim in the trial court. Accordingly, this Court determines that Ground I is procedurally defaulted based on the independent and adequate state law doctrine.

Ground II

As mentioned above, Islas makes two claims in Ground II. Islas claims that his trial counsel failed to show him physical documentation of the plea offers. Islas also claims that his trial counsel was ineffective during the plea-negotiation process by

allegedly failing to advise him that audiotaped conversations would be inadmissible under the Confrontation Clause.

Both claims alleged in Ground II are precluded from federal habeas review. Islas did not raise either of these claims in the trial court and the court of appeals. *See Castillo*, 399 F.3d at 998 n.3; *Swoopes*, 196 F.3d at 1010. Any effort to return to the state court in an attempt to exhaust the claims alleged in Ground II at this time would be futile. Arizona's procedural-default rules are strictly and regularly applied and typically render futile any attempt to return to state court to present additional claims. *See* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a) (successive post-conviction relief proceeding allowed only under limited circumstances); *see also Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of Arizona Rules of Criminal Procedure); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Rule 32.4(a) as a basis for dismissing an Arizona PCR petition, distinct from preclusion under Rule 32.2(a)); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (en banc) (rejecting assertion that Arizona courts' application of procedural default rules had been "unpredictable and irregular"); *State v. Mata*, 916 P.2d 1035, 1050–52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

It would be futile for Islas to attempt to return to state court to properly exhaust the Ground II claims. *See Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Reed v. Ross*, 468 U.S. 1, 10–11 (1984). Because Islas has no available remedy in the state court for either claim alleged in Ground II, the claims alleged in Ground II are technically exhausted and procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991) (a court cannot grant a state prisoner's application for federal writ of habeas corpus unless the petitioner has properly exhausted the remedies available in state court); *see also White v. Lewis*, 874 F.2d 599, 602–03 (9th Cir. 1989) (dismissal without prejudice for failure to exhaust is proper only if the prisoner has a currently available state remedy).

…

…

Ground III

In Ground III, Islas alleges that his trial counsel was ineffective because counsel failed to discuss "any trial strategy," failed to "file any notice of defense," failed to "produce any form of disclosure" to him before trial, and put on "'no defense whatsoever,' depriving Petitioner of his fundamental right to effective representation." (Doc. 1 at p. 8.) As mentioned above, in ruling on Islas' PCR petition, the trial court determined that Islas raised ineffective assistant of counsel claims in furtherance of his single challenge to his trial counsel's effectiveness in attempting to persuade him to accept the second plea offer and not as to his trial counsel's effectiveness at trial. (Doc. 16 at p. 3.) Similarly, the Arizona Court of Appeals reviewed Petitioner's petition for review of the trial court's denial of his PCR petition in the context of Islas' trial counsel's effectiveness during the plea negotiation process. (Doc. 16. at pp. 32-33.) Accordingly, this Court determines that Islas has not squarely or meaningfully raised any of the IAC claims alleged in Ground III in the state courts. As a result, none of the claims that Islas alleges in Ground III are properly exhausted. *See Castillo*, 399 F.3d at 998 n.3; *Swoopes*, 196 F.3d at 1010.

As with the claims alleged in Ground II, any attempt by Islas to now return to the state court in an effort to exhaust the claims alleged in Ground III would be futile. As mentioned above, Arizona's procedural-default rules are strictly and regularly applied and typically render futile any attempt to return to state court to present additional claims. *See* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a) (successive post-conviction relief proceeding allowed only under limited circumstances). It would be futile for Islas to attempt to return to state court to properly exhaust the claims alleged in Ground III. *See Teague*, 489 U.S. at 297–98; *Reed*, 468 U.S. 10–11. Because Islas has no available remedy in the state court for the claims alleged in Ground III, these claims are technically exhausted and procedurally defaulted. *Coleman*, 501 U.S. at 731–32 (a court cannot grant a state prisoner's application for federal writ of habeas corpus unless the petitioner has properly exhausted the remedies available in state court).

In sum, this Court determines that all of the claims alleged in Grounds I, II and III of the Petition are procedurally defaulted.

**The Procedural Defaults Cannot be Excused**

Federal habeas review of a procedurally defaulted claim is precluded unless the default is excused. A procedural default may be excused if Petitioner establishes (1) "cause" and "prejudice," or (2) that a fundamental miscarriage of justice has occurred. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "Cause" is a legitimate excuse for the default and "prejudice" is actual harm resulting from the alleged constitutional violation. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). (Citations omitted.) "Cause" that is sufficient to excuse procedural default is "some objective factor external to the defense" which precludes the petitioner's ability to pursue his claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" in the habeas context means actual, objective harm resulting from the alleged error. *United States v. Frady*, 456 U.S. 152, 170 (1982) (a habeas petitioner "shoulder[s] the burden of showing, not merely that the errors…created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage" and infected the state proceedings with errors of constitutional dimension). (Emphasis in original.) A fundamental miscarriage of justice may occur where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Murray,* 477 U.S. at 496 (holding that the merits of a defaulted claim could be reached "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent…").

Islas makes no effort to excuse his failure to properly exhaust his habeas claims. (Docs. 1, 14.) Islas has argued neither "cause" and "prejudice," nor has he argued that he is actually innocent of the charge as found by the jury. This Court has found no support in the record for a determination that the procedural defaults should be excused.

This Court determines that there is no excuse for the procedural defaults.

**Request for Evidentiary Hearing**

Islas has requested an evidentiary hearing. (Doc. 19 at p. 1.) The AEDPA imposes "'an express limitation on the power of a federal court to grant an evidentiary hearing"

and limits "considerably the degree of the district court's discretion" to order such a hearing. *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999) (quoting *Cardwell v. Greene*, 152 F.3d 331, 336 (4th Cir. 1998)). Section 2254(e)(2), Title 28 U.S.C., controls whether a petitioner may receive an evidentiary hearing in federal district court on claims that were not developed in the state courts. *See Williams*, 529 U.S. at 429.

> The AEDPA bars a hearing
>
> unless the applicant shows that –
>
>     (A) the claim relies on –
>
> …
>
>       (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>     (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

*Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir. 2000) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)-(B)). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437. "For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error." *Id.*

A petitioner may receive an evidentiary hearing in Arizona state court on a PCR petition only if he states a "colorable claim"; that is, a claim that "presents a material issue of fact or law which would entitle the defendant to relief." Ariz. R. Crim. P. 32.6(c). A petitioner cannot establish a "colorable claim" for relief without supporting the PCR petition with "[a]ffidavits, records, or other evidence […]." Ariz. R. Crim. P. 32.5. If the prisoner fails to diligently develop his claim in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements (set forth in § 2254(e)(2)) are met. *Williams*, 529 U.S. at 437.

Even if a prisoner satisfies 28 U.S.C. § 2254(e)(2)'s requirements, the Court is not required to grant an evidentiary hearing. *See Downs*, 232 F.3d at 1041 ("[E]ven assuming Downs's claim could clear the hurdle posed by § 2254(e)(2), the fact that a hearing would be permitted does not mean that it is required. The district court retains discretion whether to hold one.") Finally, the habeas court need not conduct an evidentiary hearing where it can resolve the claims by referring to the state court record. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

Petitioner was not diligent in presenting his claims in state court. As explained above, none of the claims alleged by Petitioner are properly exhausted. It follows that Petitioner did not diligently pursue the factual development of is claims as he is required to before this Court may exercise its discretion and hold an evidentiary hearing.

This Court determines that Petitioner is not entitled to an evidentiary hearing on his Petition.

### RECOMMENDATION

All of the claims alleged in the Petition are procedurally defaulted without excuse. Accordingly, the Magistrate Judge recommends that the District Court **dismiss** the Petition. Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **4:17-CV-00307-RCC**.

Dated this 26th day of June, 2018.

Honorable D. Thomas Ferraro
United States Magistrate Judge